## The S. H. Foster.

### Lumbermen's Min. Co. v. Gilchrist et al.

*(Circuit Court, N. D. Ohio, E. D. December 30, 1891.)*

In Admiralty. Suit to recover damages for breach of charter. On appeal from district court. Modified.

*Harvey D. Goulder*, for appellants.

*Henry S. Sherman*, for appellee.

Jackson, Circuit Judge. The libel in this case is filed to recover damages which libelant sustained by reason of the failure of the schooner S. H. Foster to carry one cargo of iron ore from Escanaba, Mich., to some Lake Erie port, (not east of Erie,) during the season of navigation of 1886. Libelant's contract or charter-party with respondents in respect to the schooner Foster is substantially the same as that made in respect to the Bruce, considered and determined in case No. 1,912, between the same parties. 50 Fed. Rep. 118. The Foster was to be towed by the propeller Tuttle. She fell short one trip, and for her failure to make that one trip, the court, under the report of the special master, awarded the libelant as damages the sum of $477.70, with costs of suit. The Foster reached Escanaba on her last trip on the morning of November 26, 1886, which was Thanksgiving day. By the terms of the charter-party, libelant was under no obligation to commence loading her upon that "public holiday;" but commenced loading her at 2 p. m. on the 28th day of November, as soon as she could be gotten up to the docks. The ore was frozen hard, and could not be loaded on the boat to any extent. After making the attempt to load her until 12 m. on the 29th day of November, when about 200 tons of the ore were placed on board, the loading was suspended, and the Foster was the next day laid up at Escanaba for the winter. If she could have been loaded before laying up for the winter, she could not have made the trip, as the season for navigation had in fact closed before she commenced taking on the 200 tons. When navigation opened in the spring of 1887, she resumed her loading, and finished taking on her cargo of ore May 3, 1887. The bill of lading given for this cargo recited: "Freight at $—— per gross ton." But the freight actually paid by libelant was $1.35 on the 1,164 tons carried, being the sum of $407.40 above the contract price. The claim made by the libelant, and found by the special master, that other tonnage had been obtained prior to November 22, 1886, in place of this last trip by the Foster, is not sustained. Libelant obtained other tonnage between the 1st and 16th of November, but it cannot properly be said to have been secured in consequence of the Foster's default, for libelant requested the Foster to go to Escanaba for her last load at or about the time of procuring such other tonnage, and when the Foster reached Escanaba, though late in the season, libelant commenced loading her under the contract, and finished loading her the following spring. Libelant thereby waived her previous delay, and can only claim as its damage the difference between $1 per ton under the contract and $1.35 actually paid.

Respondents offered to let this cargo go under the contract. This was all that libelant could demand under the circumstances. The matters of defense set up in the answer and the relief sought by the cross-libel are wholly unsustained.

The decree of the court below will be modified, so as to limit libelant's recovery against respondents to the sum of $407.40. A judgment for that amount, without interest, will be entered in favor of libelant against respondents, together with the costs of this court and of the court below to be taxed.